The judgment of the court was pronounced by
Slidell, J.
The defendant in this case is a married woman. In January, 1845, at which time she was about sixteen years of age and married, a family meeting was held to deliberate upon her affairs. In the proces verbal its members state that the land and slaves inherited by her from her father are “liable to certain debts, the payment of which can be, and probably will be enforced against the said estate at considerable costs and expense, and even at a great sacrifice, unless arrangements should be made to settle the said debts, which cannot be effected except by a loan of money; and that it was therefore the interest of the minor that she be authorized to mortgage her lands and slaves.” Four of the members advised that she should be authorized to obtain a mortgage loan of $6000. The fifth, her maternal uncle, dissented as to the amount, and was of opinion that $3000 would suffice for the contemplated purpose. These proceedings were homologated by the parish judge; and the decree was, that she be authorized to obtain a loan upon mortgage pursuant to the opinion of the majority. Parol evidence was admitted, and we think properly, to show that she owed two debts, one to the Canal Bank and one to J. B. Theall. And as it does not appear that there were any others, we might infer, independent of the assertion of the witness who was a member of the meeting, that these were the debts contemplated by them. It is proved that these debts were not paid out of the money borrowed from the plaintiffs. They appear, on the contrary, to be still outstanding. In January, 1846, a notarial deed was executed by Mrs. Fraser, assisted by her husband, in favor of the plaintiffs. In this deed, she recites that she acts with the authorization of her husband, and in accordance with the deliberations of the family meeting. She declares that she is indebted to the plaintiffs, a commercial house doing business in Philadelphia, in the sum of $6000, “ for advances made her by the said firm, and which she acknowledges to have received in full, and for which amount of six thousand dollars, she does, by these presents, give good acquittance and discharge.” . She binds herself to pay the arik^nt to the plaintiffs at their counting house in Philadelphia in three installments, and mortgages her lands and slaves to secure the payment. No money *587 is stated or appears to have been paid at the time. The advances, whatever they were, are antecedent, and rest simply upon the acknowledgment in the deed. There is no testimony aliunde to show their nature or amount, the circumstances under which they were made, or the purposes to which they were applied. The defendant .does not appear to have been separated in property. In 1-847, the first installment not having been paid, suit was brought by the mortgagees demanding a personal judgment against Mrs. Fraser, and a sale of the mortgaged property. In her answer, she denies that the sum of $6000, or any part, was ever received by her or applied to her use and benefit. She alleges that she was a minor at the date of the mortgage, and was entirely under the control of her husband; that the property mortgaged was paraphernal, inherited from her father, and not liable for debts of her husband. There was judgment in favor .of the defendant, and the plaintiffs have appealed.
From the inexperience and weakness of the sex, and the strength of the marital influence, the law takes the married woman under its protection, and does not permit her to bind herself for the benefit of her husband’s creditors, nor to appropriate her property to the payment of his debts. The contracts which she is permitted to make are those in which the consideration is for her separate advantage. It was therefore said by Martin, J., in Brandegee v. Kerr and Wife, that the circumstance of the wife having a separate advantage in the contract, is of the essence of the obligation.
To permit the naked acknowledgment of .the wife to bind her without other proof, is inconsistent with the spirit and policy of our laws and jurisprudence. The influence of the husband will readily obtain from the wife such a declaration.
It would defeat, in many cases, the protecting spirit of the law, if the burden were thrown upon the married woman to prove that the money professedly loaned to her was used by the husband, and that the form of the contract, which marital influence had induced her to adopt, was merely a cloak for a violation of the law. It seems more proper to throw the burden of proof upon the creditor, who knows he is treating with a person whose capacity is limited, and who is legally assimilated to a minor.
In the present case, the wife has acknowledged, in the act, that the sum of $6000, for which she mortgages her patrimony, was for advances theretofore made to her by the plaintiffs. Why did they not prove .the nature and circumstances of the advances 1 The proceedings of the family meeting were referred to as an authorization of the contract into which she was entering. There is nothing to show that the purpose which its members contemplated, the payment of outstanding charges upon her patrimonial estate, was accomplished. On the contrary, it is shown affirmatively that they were not paid out of the money borrowed ; and they appear to be still unpaid.
Not being satisfied under the evidence that the alleged advances were made to, or inured to the benefit of the wife, we cannot render judgment against her, or order her paraphernal property to be sold to pay the plaintiffs. See Perry v. Thompson, 3d Ann. 188. Taylor v. Carlile, 2d Ann. 579. Pascal v. Sauvinet, 1st Ann. 428. Firemen’s Insurance Company v. Cross, 4 R. R. 510. Brandegee v. Kerr, 7 N. S. 64. Count de Gaalon v. Matherne, ante p. 495.
The judgment of the district court is therefore affirmed, with costs.